IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
CRAIG CARTER,                  )
                               )
            Plaintiff,         )
                               )
     v.                        )     1:17CV148
                               )
CITY OF HIGH POINT,            )
                               )
            Defendant.         )
```

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

This matter is before the court on two motions: (1) a Motion for Default Judgment filed by Plaintiff Craig Carter (Doc. 11), to which Defendant City of High Point has filed a response in opposition (Doc. 15); and (2) a Motion to Set Aside Entry of Default filed by Defendant City of High Point (Doc. 13), to which Plaintiff has filed a response in opposition (Doc. 21). These matters are now ripe for resolution, and for the reasons stated below, Plaintiff's Motion for Default Judgment (Doc. 11) will be denied, and Defendant's Motion to Set Aside Entry of Default (Doc. 13) will be granted.

I.    **BACKGROUND**

Plaintiff Craig Carter ("Plaintiff" or "Carter") filed the Complaint in this matter on February 23, 2017, asserting violations of the Family Medical Leave Act ("FMLA"). (Complaint

("Compl.") (Doc. 1).) The Summons and Complaint were served on Defendant City of High Point ("High Point") on March 3, 2017, via certified mail, return receipt requested, to the Mayor of High Point. (Doc. 4; Ex. 1 (Doc. 4-1).) High Point asserts that on March 3, 2017, the Summons and Complaint package was received and signed for by a High Point meter reader who was providing temporary assistance in the mail room. (Def.'s Br. in Supp. of Mot. to Set Aside Entry of Default ("Def.'s Br.") (Doc. 14) at 2.) From there the package was sent to an administrative assistant in the City Manager's office, then to the Deputy City Manager, and then to Human Resources. (Id.) The package was not sent to the Mayor or the City Attorney. (Id.)

High Point failed to plead or otherwise defend as required by Rule 55(a) of the Federal Rules of Civil Procedure and, upon request of Plaintiff, default was entered on March 28, 2017. (Doc. 6.)

On March 30, 2017, High Point's City Attorney received a copy of Plaintiff's motion for entry of default; it is alleged that this is when High Point first became aware of the lawsuit. (Def.'s Br. (Doc. 14) at 2-3.) The City Attorney immediately notified counsel for High Point who then contacted counsel for Plaintiff via telephone. (Id. at 3; see Pl.'s Br. in Supp. of Mot. for Default J. (Doc. 12) at 2.) Plaintiff's counsel

informed High Point counsel that he was about to file a Motion for Default Judgment. (Pl.'s Br. in Resp. to Def.'s Mot. to Set Aside Entry of Default ("Pl.'s Resp.") (Doc. 21) at 2.) High Point counsel requested that Plaintiff set aside the default. (Def.'s Br. (Doc. 14) at 3.) Plaintiff's counsel advised that he would consider a stipulation to dismiss the default in exchange for Defendant's agreement not to oppose an amendment to Plaintiff's Complaint. (Id.; Pl.'s Resp. (Doc. 21) at 3.) Both parties agreed that High Point counsel would draft a proposed stipulation to set aside default for consideration by Plaintiff. (Def.'s Br. (Doc. 14) at 3; (Pl.'s Resp. (Doc. 21) at 3.) The attorneys also agreed to speak again the next day, March 31, 2017. (See Def.'s Br., Ex. B (Doc. 14-2) at 2.) After conferring on March 31, the attorneys agreed to consult their respective clients regarding the issue. (Def.'s Br. (Doc. 14) at 4; Pl.'s Resp. (Doc. 21) at 3.) In the meantime, High Point counsel filed a Notice of Appearance. (Doc. 10.) After Plaintiff's counsel conferred with Plaintiff, he emailed High Point counsel of his intention to move forward with filing a motion for default judgment. (Def.'s Br., Ex. C. (Doc. 14-3) at 2.)

Plaintiff's Motion for Default Judgment was filed on March 31, 2017. (Doc. 11.) High Point filed its Motion to Set Aside Entry of Default on April 7, 2017. (Doc. 13.)

A.  **Facts of Underlying Litigation**

Carter began working for High Point on March 17, 2008. (Compl. (Doc. 1) ¶ 8.) The essential functions of Carter's job included maintaining overhead powerline equipment and maintenance of city powerlines and infrastructure. (Id. ¶ 10.) Carter alleges that he "adequately performed his job to the legitimate expectations of [High Point], he maintained consistently positive performance reviews, and did not have a disciplinary history prior to the discriminatory performance review that led to his termination." (Id. ¶ 9.)

In November 2014, High Point approved Carter for leave under the FMLA for knee surgery. (Id. ¶ 13.) Carter began taking FMLA leave around November 4, 2014, and returned to work around March 1, 2015. (Id. ¶¶ 13, 14.) On March 24, 2015, High Point issued Carter an employee performance appraisal that stated Carter's overall performance "met expectations," but his attendance and punctuality were below expectations stating he "does not accumulate sick leave well." (Id. ¶ 15; Ex. 1 to Compl. (Doc. 1-1) at 7-8.)[1]

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

Following his review of this performance plan, Carter was asked to meet with the director of High Point's electric department on April 10, 2015. (Compl. (Doc. 1) ¶ 17.) At this meeting, Carter was presented with the same March 24 performance appraisal, but it had been altered to show an overall performance of "below expectations," and his attendance and punctuality were altered to read "does not accumulate sick leave well as reflected from 3-18-14 to 11-4-14." (Id. ¶ 18; Ex. 2 to Compl. (Doc. 1-2) at 7-8.) Carter also alleges he was presented with an employee improvement plan and was told to sign both the performance appraisal and the improvement plan or face termination. (Compl. (Doc. 1) ¶ 19.)

On April 28, 2015, High Point held another meeting with Carter where he was reprimanded for having been tardy on one day since the implementation of the plan, and where he was also accused of making his team late to a job. (Id. ¶ 20.) Carter was suspended following that meeting. (Id.)

On May 1, 2015, High Point held another meeting with Carter regarding his employment. (Id. ¶ 22.) On May 6, 2015, High Point notified Carter via telephone that he was being terminated. (Id.) On June 24, 2015, Carter attempted to appeal his termination to the City Manager, stating that he felt that his termination was related to his FMLA leave. (Id. ¶ 23.) Carter

alleges that there "was a causal connection between Carter's protected activity, [and High Point's] negative performance review and termination." (Id. ¶¶ 25-32.) Carter alleges he has suffered pecuniary injury because of his termination. (Id. ¶ 24.)

II. **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 55(c), this court "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). In determining whether good cause exists for setting aside an entry of default, the Fourth Circuit has set forth six factors to consider: (1) "whether the moving party has a meritorious defense"; (2) "whether it acts with reasonable promptness"; (3) "the personal responsibility of the defaulting party"; (4) "the prejudice to the party"; (5) "whether there is a history of dilatory action"; and (6) "the availability of sanctions less drastic." Payne ex rel. Estate of Calzada v. Brake, 439 F.3d 198, 204–05 (4th Cir. 2006) (citations omitted). This court also notes that an "extensive line of decisions" has held that "Rules 55(c) and 60(b) are to be liberally construed in order to provide relief from the onerous consequences of

defaults and default judgments."[2] Tolson v. Hodge, 411 F.2d 123, 130 (4th Cir. 1969) (citations omitted).

The Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417 (4th Cir. 2010).

**III. ANALYSIS**

    **A.    Whether Defendant has a Meritorious Defense**

In determining whether there is a meritorious defense for purposes of setting aside a default, "all that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would

---

[2] Although [courts] have analyzed Rule 55(c) and Rule 60(b) motions using the same factors, see United States v. Moradi, 673 F.2d 725, 727–28 (4th Cir. 1982), the burden on a movant seeking relief under the two rules is not the same. . . . Rule 60(b) motions request relief from judgment, which implicates an interest in 'finality and repose,' see id., a situation that is not present when default has been entered under Rule 55(a) and no judgment has been rendered. Therefore, while an analysis under each rule employs similar factors, Rule 60(b)'s 'excusable neglect' standard is a more onerous standard than Rule 55(c)'s 'good cause' standard, which is more forgiving of defaulting parties because it does not implicate any interest in finality.

Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc., 616 F.3d 413, 420 (4th Cir. 2010).

permit either the Court or the jury to find for the defaulting party," or which would establish a valid counterclaim. United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982); Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 812 (4th Cir. 1988). High Point identified the following defenses: (1) High Point had independent reasons for terminating Carter, such as habitual attendance and punctuality issues, which were unrelated to his FMLA leave; (2) High Point's actions were based upon legitimate, non-discriminatory, and non-retaliatory reasons unrelated to Carter's FMLA leave; and (3) Carter has not established any causal connection between his termination and any protected activity. (Def.'s Br. (Doc. 14) at 6-7; see Aff. of Garey Edwards (Doc. 16).) Defendant also cited to supporting authority for its asserted defenses. (Def.'s Br. (Doc. 14) at 7). This court finds that Defendant has sufficiently proffered a meritorious defense for purposes of setting aside the entry of default on this factor.

### B. **Whether Defendant Acted with Reasonable Promptness**

Whether High Point acted with reasonable promptness in moving to set aside the entry of default is not contested here. High Point contends that upon discovering it had been served with this lawsuit and that a default had been entered, it acted immediately by contacting High Point's counsel who in turn

immediately contacted Plaintiff's counsel to request consent to set aside the default. (Def.'s Br. (Doc. 14) at 5.) High Point also contends that "[w]ithin hours, [it] launched an investigation as to the cause of the delay." (Id.) Plaintiff concedes that "Defendant's counsel moved with reasonable promptness upon learning of the entry of default." (Pl.'s Resp. (Doc. 21) at 4.)

This court agrees that High Point acted timely when, immediately upon learning of the entry of default, its counsel contacted Plaintiff's counsel to request consent to set aside the default. Seven days after learning that Plaintiff would not consent, High Point filed its motion to set aside the entry of default, which was only ten days after the actual entry of default.

C. **Personal Responsibility of the Defaulting Party and Whether There is a History of Dilatory Action**

Under the personal responsibility factor, the initial focus is to determine whether or not the defaulting party was personally responsible for the default. "When the party is blameless and the attorney is at fault, the [preference for trials on the merits] control[s] and a default judgment should ordinarily be set aside. When the party is at fault . . . the party must adequately defend its conduct in order to show

excusable neglect." Augusta, 843 F.2d at 811 (discussing factor in context of relief from default judgment under Rule 60(b)). Here, as asserted by Plaintiff and acknowledged by High Point, the mishandling of the Summons and Complaint was the fault of High Point. Plaintiff argues that because High Point was at fault in failing to properly train its employees regarding the receipt of legal service, "this factor should weigh heavily against [High Point] in its motion to set aside the entry of default." (Pl.'s Resp. (Doc. 21) at 6-7.) Plaintiff relies in part on Park Corp. v. Lexington Ins. Co., 812 F.2d 894, 897 (4th Cir. 1987), for this position.

This case is similar to Park in that the summons and complaint were received by the defaulting party in its own mailroom, but the papers were subsequently lost as a result of mishandling by its own employees. Park, 812 F.2d at 897. However, this case can also be distinguished from Park, much like the case in Colleton wherein the court stated that in Park, "unlike here, the defaulting party offered no explanation for the disappearance of the summons and complaint, and made no showing that its internal procedures were designed to avoid such occurrences." Colleton, 616 F.3d at 420. Because of this, "the district court could not determine whether [the defaulting party] had an acceptable excuse for lapsing into default." Park,

812 F.2d at 897. Park is further distinguishable in that its analysis was under the more onerous standard of Rule 60(b)'s "excusable neglect" as opposed to Rule 55(c)'s "good cause" standard. Id.; see Colleton, 616 F.3d at 420. Here, High Point admitted to its mishandling, investigated its cause, offered an explanation, and asserted that it "intend[ed] to implement appropriate measures to safeguard against such issues going forward." (Def.'s Br., Ex. A (Doc. 14-1) ¶ 11.)

Furthermore, High Point asserts that it does not have a history of dilatory action, and "has not experienced similar issues in the past." (Id. ¶ 11; Def.'s Br. (Doc. 14) at 9.) Nor did Plaintiff offer any evidence of a history of dilatory action by High Point. (See Pl.'s Resp. (Doc. 21) at 4.) As such, although High Point is personally responsible for the default, that fact alone does not require denying High Point's motion to vacate the entry of default.

### D. **Prejudice to Plaintiff and the Availability of Sanctions Less Drastic**

"In the context of a motion to set aside an entry of default . . . delay in and of itself does not constitute prejudice to the opposing party." Colleton, 616 F.3d at 418. Furthermore, "no cognizable prejudice inheres in requiring a plaintiff to prove a defendant's liability, a burden every

plaintiff assumes in every civil action filed in every federal court." Id. at 419 (footnote omitted). However, Plaintiff asserts this court should consider the following factors in determining whether Plaintiff was prejudiced:

> (1) whether the delay made it impossible for the aggrieved party to present certain evidence; (2) whether the delay hampered the non-defaulting party's ability to proceed with trial; (3) whether the delay impaired the non-defaulting party's ability to complete discovery; and (4) whether the delay was used by the defaulting party to commit a fraud.

Red Light Mgmt., Inc. v. Dalton, 315 F.R.D. 65, 73 (W.D. Va. 2016) (citing Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 952-53 (4th Cir. 1987); Burton v. TJX Cos., Inc., No. 3:07-CV-760, 2008 WL 1944033, at *4 (E.D. Va. May 1, 2008)). (See Pl.'s Resp. (Doc. 21) at 7.)

Plaintiff concedes that he "cannot make a showing of prejudice under the four factors above," but that he has suffered prejudice nonetheless. (Pl.'s Resp. (Doc. 21) at 8.) Specifically, Plaintiff alleges he has "suffered additional expense caused by the delay" in the preparation of additional motions, affidavits, and other documents. (Id.) This court acknowledges that Plaintiff has suffered some prejudice by incurring the additional expense of obtaining an entry of default because of the delay. However, some of the additional expenses were incurred because Plaintiff elected to proceed with

the filing of a default judgment. This court does not find any prejudice so extensive as to require any relief to rectify the prejudice. This court is not aware of any history of dilatory action by Defendant. This court will not award any fees at this time.

**VI. <u>CONCLUSION</u>**

Finding that the applicable factors weigh in favor of setting aside the entry of default, **IT IS HEREBY ORDERED** that the Motion to Set Aside Entry of Default (Doc. 13) is **GRANTED.**

**IT IS FURTHER ORDERED** that the Motion for Default Judgment (Doc. 11) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant shall answer or otherwise respond to the Complaint within ten (10) days of the entry of this Order.

This the 12th day of September, 2017.

_____
  United States District Judge